# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JUDY M. MOSLEY,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:17-cv-183
Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Judy M. Mosley brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and

supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 8), the Commissioner's response in opposition (Doc. 11), and plaintiff's reply (Doc.

12).

## I. Procedural Background

Plaintiff filed her application for DIB in January 2013 and her application for SSI in

February 2015 alleging disability since September 2, 2012, due to depression, anxiety,

degenerative disc disease in the neck and lower back, and cognitive issues from prior strokes and

an aneurism. After initial administrative denials of her claim, plaintiff was afforded a *de novo*

hearing before administrative law judge (ALJ) Deanna L. Sokolski on July 20, 2015. On

November 27, 2015, the ALJ issued a decision denying plaintiff's DIB and SSI applications.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i) -(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since September 9, 2012, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease and (sic) the cervical and lumbar spines, right leg claudication, migraines, moyamoya disease, history of cerebral vascular accidents, depression and mood disorder, anxiety disorder, and cognitive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the [plaintiff] can never climb ladders, ropes, or scaffolds. The [plaintiff] is able to frequently climb ramps and stairs, and

3

occasionally stoop, kneel, crouch, and crouch (sic). She is able to frequently push and pull, and frequently finger with the left nondominant upper extremity. The [plaintiff] can frequently push and pull with (sic) the operate foot controls with the bilateral lower extremities. She must avoid all exposure to workplace hazards such as unprotected heights and dangerous moving machinery, and must avoid concentrated exposure to extreme temperatures. The [plaintiff] can perform simple routine repetitive tasks performed in a work environment free of fast paced production requirements, and involving only simple work-related decisions with few, if any, workplace changes, and superficial interaction with supervisors, coworkers, and the public as part of the job duties.

6. The [plaintiff] is unable to perform past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1963 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404 Subpart P. Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 9, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-27).

---

[1]Plaintiff's past relevant work was as a legal secretary, a sedentary, skilled position. (Tr. 26, 75).

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as sorter (90,000 jobs nationally), packer (150,000 jobs nationally), and cleaner (100,000 jobs nationally). (Tr. 27, 77-78).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §
405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by
substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.
Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,
478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence
as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,
402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229
(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a
preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In
deciding whether the Commissioner's findings are supported by substantial evidence, the Court
considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the
disability determination. Even if substantial evidence supports the ALJ's conclusion that the
plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails
to follow its own regulations and where that error prejudices a claimant on the merits or deprives
the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).
*See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was
otherwise supported by substantial evidence where ALJ failed to give good reasons for not
giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Medical Records

#### 1. Physical Impairments and limitations

##### a. Gary Shearer, M.D.

Prior to plaintiff's onset date of disability, she treated with primary care physician Dr. Shearer. (Tr. 274-664). During her treatment with Dr. Schearer, she underwent an MRI of her cervical spine in February 2007 due to continued neck pain following a motor vehicle accident in December 2006. The MRI showed disc protrusion at C5-6 causing a moderate degree of stenosis and moderate obstruction of the right-sided nerve root canal. (Tr. 661). In 2009, Dr. Shearer noted that plaintiff had a stroke in the past. She had a lot of muscle aching with chronic fatigue. She had neck pain, back pain, hypertension, and low back pain. At that time, she was assessed with cervical spondylosis, lumbar spondylosis, bilateral sacroiliitis, history of two CVA's (cerebrovascular accident), probable fibromyalgia, posttraumatic occipital neuralgia headaches, anxiety and depression, hypertension, restless leg syndrome, stress incontinence, and a history of brain surgery. (Tr. 409). A treatment note from July 2010 shows plaintiff complained of right leg cramping after walking a short distance. (Tr. 369).

##### b. Brian Kuhn, M.D.

In June 2014, plaintiff was seen for a peripheral vascular disease consultation by Dr. Kuhn for right leg claudication. (Tr. 762-67). Plaintiff reported lower extremity pain in her right leg with activity and walking which had been present for the last 6 years, but had been getting worse in the last few months. She noted that she was not able to walk from her car into the grocery store before having to stop due to cramping in her right calf. She continued to smoke half a pack of cigarettes per day but at that time reported she was trying to stop. Due to the pain

in her leg she underwent noninvasive vascular testing on May 29, 2014, which showed her right ABI (Ankle Brachial Index) was 0.66 and the left was 0.97. She also had a significant history for moyamoya disease. She had a previous stroke, an intracranial hemorrhage, requiring a craniotomy on her left side. (Tr. 762).

Plaintiff underwent bilateral common iliac stents on July 2, 2014, for life limiting claudication. (Tr. 788-91). Two weeks following her surgery, plaintiff reported walking without difficulty or cramping in her legs. (Tr. 769). By October 2014, plaintiff reported no evidence of claudication. (Tr. 776). When seen for follow up in July 2015, she complained of left calf pain. Her medication was restarted and she was instructed on tobacco cessation. (Tr. 880-84).

### c. Vijay Rajan, M.D.

Plaintiff consulted with neurologist Dr. Rajan for headaches from April through July 2015. (Tr. 851-57). Dr. Rajan assessed intractable chronic migraine headaches and initially prescribed Topamax, which plaintiff reported did not help, so he added Depakote. (*Id.*).

### d. Martin Fritzhand, M.D.

Plaintiff was consultatively examined by Dr. Fritzhand in May 2013 for disability purposes. (Tr. 679-87). Plaintiff reported a history of two strokes and that she is confused and very slow. She reported left-sided weakness and low back and neck cramps. (Tr. 679). On examination, Dr. Fritzhand found she walked normally and could forward bend without difficulty. Range of motion studies were good. Dr. Fritzhand found no joint abnormalities as heat, swelling and capsule thickening were absent. There was no evidence of nerve root damage as all deep tendon reflexes were brisk, and he found no evidence of muscle atrophy. Her grasp strength and manipulative ability were well-preserved bilaterally, but he found absent

7

contralateral pulses, and diminished pinprick and light touch over the left arm. (Tr. 680-81, 684-87). He assessed a history of moyamoya disease and chronic neck and low back pain. (Tr. 681). He concluded that plaintiff appears capable of performing a mild to possibly moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. He further noted that plaintiff has no difficulty in reaching, grasping, and handling objects. (Tr. 681).

### e. State agency review

State agency physician, Venkatachala Sreenivas, M.D., reviewed the file on May 30, 2013 and completed a physical residual functional capacity assessment. (Tr. 84-93). He opined that plaintiff could lift and/or carry and push and/or pull no more than 50 pounds occasionally and 20 pounds frequently, and she could stand, walk and/or sit for about six hours in an eight-hour workday. (Tr. 91). Dr. Sreenivas also found that plaintiff could occasionally crawl, frequently kneel or crouch, but never climb ladders, ropes or scaffolds. (Tr. 91-92). Plaintiff was also found to have diminished sensation in her left upper extremity and would have limitation with left fine motor skills. (Tr. 92). Dr. Sreenivas assigned "great weight" to Dr. Fritzhand's assessment. (Tr. 91). Dr. Sreenivas deemed plaintiff's allegations "partially credible." (*Id.*). State agency physician Maureen Gallagher, D.O. M.P.H., affirmed Dr. Sreenivas's assessment in December 2013. (Tr. 104-06).

### 2. Mental Impairments

### a. Roberto Soria, M.D.

Plaintiff was initially evaluated by psychiatrist Dr. Soria at the East End Community Health Center in January 2013. (Tr. 666-69). She reported a 20-year history of anxiety which

developed into panic attacks following her second stroke. Plaintiff also described sadness with spontaneous crying, feeling overwhelmed, constant anxiety, feeling on edge, and ruminating. On mental status examination, she was well-groomed, and she exhibited average demeanor and eye contact with clear speech. Her thought content was normal. Her mood appeared anxious and depressed. Her affect was constricted, not labile, and not inappropriate. (Tr. 667-68). Plaintiff was diagnosed with generalized anxiety disorder with panic and major depressive disorder, recurrent. (Tr. 668). Dr. Soria prescribed medication. (Tr. 669).

In May 2013, plaintiff reported improvement in her mood, including her anxiety. She reported that her panic attacks were now weekly or less, lasting about 10 minutes, in contrast to her previously daily panic attacks. Plaintiff also reported that she still gets "confused, and can't remember things, just feel slow." (Tr. 719).

When seen in October 2013, plaintiff noted her mood continued to improve. She was having conflict with her son, in that "he doesn't move out." She was also concerned that her unemployment would run out, so she was applying again for disability. She continued with baseline memory problems. (Tr. 715). Her medication was continued. (Tr. 716).

In April 2014, plaintiff was assessed at a new clinic where Dr. Soria had transferred his practice. (Tr. 836). At that time, she had no refills left on her medication. The intake social worker noted that plaintiff had been treated for depression and anxiety for the past few years strictly through medication. Her symptoms appeared after having two strokes, brain surgery, and an aneurism. Plaintiff reported that she "could not function normally afterwards and she now feels like a shell of her former self." She reported self-isolation because she could not function like she used to. Plaintiff stated she would like to be under Dr. Soria's care again, and she was

9

willing to try individual therapy. (Tr. 836). She reported watching TV all day and staying on the couch at home. (Tr. 837). She spent a lot of time sleeping. (Tr. 842). Plaintiff was assessed with a mood disorder due to strokes/aneurism with major depressive-like episodes and an anxiety disorder. (Tr. 845).

In June 2014, Dr. Soria completed an impairment questionnaire in which he opined that plaintiff was markedly limited in her ability to remember locations and work procedures; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; sustain an ordinary routine; and complete a normal workweek without interruption from her psychologically-based symptoms. Dr. Soria found that plaintiff was moderately limited in her ability to work in coordination or proximity with others; to interact appropriately with the general public, supervisors, and co-workers; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently. Plaintiff was found to have mild limitations in her ability to understand and remember simple and detailed instructions; to carry out simple instructions; and to maintain socially appropriate behavior. He also opined that while plaintiff's mood may improve with treatment, her organic brain syndrome will not improve. He also opined plaintiff was capable of low stress work. Dr. Soria concluded that plaintiff would be likely absent from work more than three times a month due to her impairments. (Tr. 729-36).

### b. Consultative evaluation

Plaintiff was evaluated by Jessica Twehues, Psy.D., for disability purposes on July 29, 2013. (Tr. 689-96). Plaintiff reported she had never participated in mental health treatment until she began seeing Dr. Soria for anxiety and depression. She described her mood as

depressed most of the time since 2012 when she stopped working. She reportedly stays up late and wakes up late. Her appetite was described as "pretty good." She stated that she worries a lot. She reported that she tends to cry easily and laugh at the wrong times. She reported that her affect has been strained since experiencing the strokes in 1999 and 2002. She reported that her energy is very poor, but she is not easily fatigued. She reported having frequent forgetfulness and difficulties focusing since experiencing her strokes. She feels anxious most of the time, tense, and on edge, especially when driving. She reported that she experiences random panic attacks, which tend to occur approximately three times per month. She reported that her heart races; her chest is tight; and she has difficulty breathing and begins to feel dizzy. She denied experiencing delusions, hallucinations, or paranoia. (Tr. 691).

Psychometric testing performed during the evaluation resulted in a full scale I.Q. of 74. On Working Memory and Processing Speed tests, she scored low in the third and sixth percentiles for her age group. (Tr. 692-93).

Dr. Twehues assessed a cognitive disorder, depression and anxiety. (Tr. 695). Dr. Twehues concluded that plaintiff accurately followed all simple instructions during her interview, and would be expected to be able to do so in a workplace setting. However, due to cognitive impairment, she is likely to have difficulty understanding and retaining instructions for complex, multi-step tasks. (Tr. 695). Dr. Twehues also opined that plaintiff would likely have difficulty sustaining focus for prolonged periods of time and is easily distracted by negative thoughts and worry. She also may have difficulty with everyday workplace pressures. (Tr. 696).

### c. State agency review

At the request of the state agency, the evidence was reviewed in August 2013 by Mary K. Hill, Ph.D. (Tr. 84-95). Dr. Hill found plaintiff had mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (Tr. 89). Dr. Hill found that plaintiff's statements were fully credible. (Tr. 90). Dr. Hill opined that plaintiff could understand, remember, and follow 1-2 step tasks, though she "may need extra time and repetition for new learning" and would have significant problems if she had to rely just on visual learning. (Tr. 93). Dr. Hill also opined that plaintiff would be limited in her ability to tolerate normal work pressures, but she would be able to "perform 1-2 step tasks [with] no more than moderate production quotas and time limitations" and no multi-tasking. (Tr. 94). Dr. Hill further restricted plaintiff to limited social contact in a stable setting where changes were minor and could be explained in advance. (Tr. 95).

State agency psychologist Tonnie Hoyle, Psy.D., reviewed the record upon reconsideration in January 2014 and essentially affirmed Dr. Hill's assessment. (Tr. 103-09).

### E. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in determining both plaintiff's mental and physical residual functional capacity and the weight assigned to the medical source opinions; (2) the ALJ erred by not awarding plaintiff a closed period of disability based on her peripheral artery disease, which limited her to sedentary work; (3) the ALJ erred by not finding any work-related limitations stemming from plaintiff's migraine headaches, which she determined was a severe impairment; (4) the ALJ erred in determining plaintiff's credibility, pain and subjective

complaints; and (5) the ALJ erred at step 5 by presenting improper hypothetical questions to the vocational expert. If limited to sedentary work, plaintiff would be deemed disabled in July 2013, when she turned age 50, under Grid Rule 201.14, Appendix 2, 20 C.F.R. Part 404. (Docs. 8 and 11).

### 1. Weight to the medical sources and RFC findings

Plaintiff contends that despite giving "great weight" to the opinion of Dr. Twehues, the consultative psychologist, the ALJ failed to incorporate into the mental RFC Dr. Twehues' work-related limitations on plaintiff's ability to sustain work for 40 hours per week. Specifically, plaintiff asserts that the ALJ failed to incorporate or address Dr. Twehues' assessment that plaintiff would likely have difficulty sustaining focus for prolonged periods; she would be easily distracted by negative thoughts and worry; and she could have difficulty with everyday minor workplace pressures. (Tr. 696). Plaintiff further alleges that the ALJ failed to incorporate into the mental RFC the state agency psychologists' opinions that plaintiff would work at a slower pace (Tr. 108); she may need extra time and repetition for new learning (Tr. 107); and she would have significant problems if she relies on visual learning (Tr. 107).

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).[3] "Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner." *Profitt v. Comm'r of*

---

[3] Effective March 27, 2017, the regulations were amended and similarly provide that ALJs "are responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability. In doing so, [the ALJ] review[s] all of the medical findings and other evidence that support a medical source's statement that [a claimant] is disabled." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

*Soc. Sec.*, No. 1:13-cv-679, 2014 WL 7660138, at *6 (S.D. Ohio Dec. 12, 2014) (Report and Recommendation), *adopted,* 2015 WL 248052 (S.D. Ohio Jan. 20, 2015) (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. §§ 404.1546(c), 416.946(c) (the responsibility for assessing a claimant's RFC lies with the ALJ). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). *See Bingaman v. Comm'r of Soc. Sec.,* 186 F. App'x 642, 647 (6th Cir. 2006); *Ford v. Comm'r of Soc. Sec.,* 114 F. App'x 194, 198 (6th Cir. 2004).

Here, the ALJ gave "great weight" to the opinion of Dr. Twehues. The ALJ acknowledged Dr. Twehues' opinion that plaintiff would likely have difficulty sustaining focus for prolonged periods; could be easily distracted by negative thoughts and worry; and may have difficulty with everyday minor workplace pressures. (Tr. 24). The ALJ also noted Dr. Twehues' opinion that plaintiff could nevertheless understand, remember, and carry out simple instructions in a workplace setting. (Tr. 23). Dr. Twehues reported that plaintiff had memory deficits on testing that would inhibit her ability to understand and retain instructions for complex multi-step tasks, particularly with regard to recalling visual information, but she opined that plaintiff "accurately followed all simple instructions given, and is expected to be able to do so in a workplace setting." (Tr. 695).

The ALJ gave "some weight" to the opinions of the state agency psychologists, who in turn gave "great weight" to Dr. Twehues' opinion. The state agency psychologists opined that plaintiff was moderately limited in her ability to understand and remember detailed instructions

but not significantly limited in her ability to understand and remember very short and simple instructions. The state agency psychologists also assessed that plaintiff would perform at a significantly slower pace than average but she would nevertheless be able to perform one to two-step tasks with no more than moderate production quotas and time limitations without multi-tasking. (Tr. 107-108).

The ALJ imposed the following limitations in the RFC finding to account for plaintiff's mental limitations in these and other areas of functioning: "The [plaintiff] can perform simple routine repetitive tasks performed in a work environment free of fast paced production requirements, and involving only simple work-related decisions with few, if any, workplace changes, and superficial interaction with supervisors, coworkers, and the public as part of the job duties." Plaintiff has failed to explain why the following restrictions in the RFC finding do not sufficiently incorporate the limitations of the consultative examiner and state agency psychologists that she identified in her statement of errors: "simple routine repetitive tasks" that are performed in a work environment that is "free of fast paced production requirements" and involve only "simple work-related decisions" with "few, if any, workplace changes." (Tr. 20). An ALJ is not required to adopt the precise limitations offered by a single medical source in assessing a claimant's RFC, and plaintiff has failed to explain how the ALJ's formulation of her mental RFC constitutes reversible error. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinion

for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.").

Next, plaintiff alleges the ALJ erred in assessing Dr. Fritzhand's opinion in formulating plaintiff's physical RFC. The ALJ determined that plaintiff was capable of a modified range of light work activity. The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Social Security Ruling 83-10. Dr. Fritzhand opined that plaintiff was capable of performing a "mild to possibly moderate amount" of sitting, standing, and walking. (Tr. 23). Plaintiff contends that "[a] 'mild to moderate amount' of standing and/or walking is not these six hours, thus limiting [plaintiff] to sedentary work. . . ." (Doc. 8 at 7-8, citing *Moeller v. Comm'r of Soc. Sec.*, 489 F. App'x 868 (6th Cir. 2012)).

Plaintiff's argument ignores the fact that the ALJ gave Dr. Fritzhand's opinion "little weight" because his description of "mild to possibly moderate" is not a function-by-function assessment and fails to precisely explain plaintiff's abilities. (Tr. 23). This was a valid reason to give the opinion only "little weight." *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *cf. Walters v. Comm'r of Soc. Sec.,* No. 1:14-cv-481, 2015 WL 1851451, at *11 (S.D. Ohio Apr. 22, 2015), (Report and Recommendation), *adopted*, 2015 WL 5693640 (S.D. Ohio Sept. 29, 2015) (citing *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007)).

In addition, *Moeller v. Comm'r of Soc. Sec.*, 489 F. App'x 868 (6th Cir. 2012), cited by plaintiff in support of her argument, is distinguishable from the instant case. Dr. Fritzhand was also the consultative examiner in *Moeller* and opined that the plaintiff was restricted "to a *mild* amount of sitting, ambulating, pushing, pulling and lifting." *Id*. at 870 (emphasis added). The

ALJ gave Dr. Fritzhand's opinion "significant probative weight" and concluded that plaintiff was limited to two hours of standing and two hours of walking each day. However, the ALJ determined plaintiff was able to sit for six hours per day. In essence, the ALJ interpreted Dr. Fritzhand's use of the term "mild" to mean plaintiff was restricted to two hours of walking and standing per day but, inexplicably, to six hours of sitting per day. The plaintiff disputed the ALJ's finding that she could sit for six hours a day and appealed. The Sixth Circuit reversed, finding the ALJ failed to set forth a reason for discounting the sitting limitation recommended by Dr. Fritzhand or identify other evidence in the record that demonstrated the plaintiff could sit for that length of time. *Id.*

Here, in contrast, the ALJ did not give Dr. Fritzhand's opinion "significant probative weight." Rather, the ALJ gave Dr. Fritzhand's opinion "little weight" because Dr. Fritzhand's vague description of "mild to possibly moderate" sitting, standing, and walking failed to precisely explain plaintiff's abilities. The ALJ set forth a valid reason for discounting Dr. Fritzhand's opinion. In addition, plaintiff points to a single finding on Dr. Fritzhand's examination – diminished light touch and pinprick over the legs – to support her walking limitations. (Doc. 8 at 8, citing Tr. 691). However, she ignores Dr. Fritzhand's other normal examination findings: no joint abnormalities as heat, swelling and capsule thickening were absent; no evidence of nerve root damage as all deep tendon reflexes were brisk; no evidence of muscle atrophy; and ambulation with a normal gait. (Tr. 680-81, 684-87). Plaintiff has failed to show the ALJ erred in her assessment of Dr. Fritzhand's opinion.

Plaintiff also contends the ALJ erred in giving little weight to the opinion of Dr. Soria, her treating psychiatrist. Plaintiff alleges that Dr. Soria's opinion is supported by Dr. Twehues'

findings on objective testing; the ALJ set forth "little discussion" of why she rejected the limitations assessed by Dr. Soria; and the ALJ failed to give "good reasons" for discounting Dr. Soria's opinion as required under the agency's regulations.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).

If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must determine the weight the opinion should be given based on a number of factors, including the length, nature and extent of the treatment relationship and the frequency of examination, as well as the medical specialization of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Gayheart,* 710 F.3d at 376.

"Importantly, the Commissioner imposes on [the SSA's] decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those reasons must be "supported by the evidence in the case

record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p).

The ALJ determined that Dr. Soria's opinion was not entitled to controlling weight because it was not consistent with the substantial evidence of record or Dr. Soria's progress notes. (Tr. 25). The ALJ also determined, after weighing the regulatory factors, that Dr. Soria's opinion was entitled to only little weight. (*Id.*) The ALJ explained that Dr. Soria's opinion was internally inconsistent; Dr. Soria had treated plaintiff for only a short period of time before he assessed her limitations; the record indicated that during the relevant period of time plaintiff demonstrated appropriate mood and affect and was oriented in all spheres; and mental health treatment records showed improvement in plaintiff's symptoms and decreased panic attacks. (Tr. 25-26).

The record substantially supports the ALJ's decision to give Dr. Soria's assessment little weight. The extreme functional restrictions assessed by Dr. Soria are not consistent with his own clinical findings or with the other medical evidence of record. As the ALJ reasonably concluded, Dr. Soria's opinion of marked limitations in plaintiff's ability to remember locations and work procedures, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, sustain an ordinary routine, and complete a normal workweek without interruption from her psychologically-based symptoms, was inconsistent with plaintiff's treatment notes and other record evidence.

Plaintiff's mental health records show that when he initially examined plaintiff in January 2013, Dr. Soria reported that plaintiff's mood appeared anxious and depressed, and her affect

was constricted. (Tr. 667-68). Plaintiff reported sadness, spontaneous crying, feeling overwhelmed, constant anxiety [and] feeling on edge, and rumination. (Tr. 666). Plaintiff was diagnosed with generalized anxiety disorder with panic and major depressive disorder, recurrent. (Tr. 668).

However, as the ALJ noted, the mental health treatment records show improvement in plaintiff's symptoms and decreased panic attacks subsequent to her initial assessment. (Tr. 26). In May 2013, plaintiff reported improvement in her mood, including her anxiety. She reported that her panic attacks now occurred weekly or less, lasting about 10 minutes, in contrast to her previously daily panic attacks. On mental status examination, Dr. Soria found plaintiff was "today not anxious" but her cognition was "slow." (Tr. 719). At her next visit, plaintiff described improvement in the past five weeks with only one panic attack in the past two weeks. (Tr. 717). Her mood/affect was "mild anxious" and her cognition was "intact." (*Id.*). In October 2013, plaintiff reported "her mood continues to improve" and she "continues with baseline memory problems." (Tr. 715). Dr. Soria's mental status examination again revealed plaintiff's mood/affect was not anxious and her cognition was "slow." (*Id.*). In April 2014, plaintiff was seen at a new clinic to re-establish care with Dr. Soria. (Tr. 836). At that time, she had no refills left on her medication. Plaintiff reported she had no depression, but she experienced uncued panic attacks once every two weeks. She reported the medication she takes for anxiety and depression helped with her symptoms, but that her symptoms were "still prominent." She was to begin outpatient therapy for behavior management. (Tr. 844). Plaintiff's mental health records showed consistent improvement in her depression and anxiety

and substantially support the ALJ's conclusion that Dr. Soria's opinion was inconsistent with his own clinical findings.

In addition, the other medical evidence of record supports the weight the ALJ gave to Dr. Soria's opinion. Medical records reflect that plaintiff routinely demonstrated appropriate mood and affect throughout the relevant time period. (Tr. 672, 677, 701, 706, 714). The assessments of Dr. Twehues and the state agency psychologists are consistent with the ALJ's finding that, contrary to Dr. Soria's opinion, plaintiff could perform work that was simple, routine, and repetitive in nature in an environment free of fast-paced production requirements with only simple work-related decisions and few, if any, workplace changes. The record substantially supports the ALJ's finding that Dr. Soria's assessment of debilitating mental restrictions was not well-supported by his clinical findings and was not consistent with the other substantial evidence in the record. 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2).

While plaintiff generally alleges that Dr. Soria's limitations are supported by the findings of Dr. Twehues on objective psychological testing (Doc. 8, citing Tr. 729-36, 690-96), plaintiff specifically cites to a single symptom of "low energy," which plaintiff reported to both Dr. Twehues and Dr. Soria, to argue that the objective findings support Dr. Soria's opinion. (*Id.*, citing Tr. 691, 718, 730, 837). In light of the other substantial evidence discussed above, plaintiff's singular citation fails to persuade the Court that the ALJ erred in weighing Dr. Soria's assessment.

Finally, plaintiff contends the ALJ erred when she discounted Dr. Soria's opinion based on the length of treatment. (Doc. 12 at 4). The ALJ noted "that at the time of [Dr. Soria's] assessment, Dr. Soria had only been treating the [plaintiff] for a short period of time." (Tr. 25).

Plaintiff alleges this is factually incorrect, as Dr. Soria's June 2014 report states that he saw plaintiff every two weeks, starting in January 2013. (Doc. 12 at 4). The record evidence fails to support Dr. Soria's representation as to the frequency of examination. The mental health treatment records indicate Dr. Soria examined plaintiff on five occasions over the period of one year, not every two weeks, prior to his assessment of her functional capacity. As discussed above, those records do not support Dr. Soria's extreme functional restrictions. The ALJ gave "good reasons" for giving Dr. Soria's opinion reduced weight and those reasons are substantially supported by the evidence of record.

### 2. Closed period of disability based on her peripheral artery disease

Disability benefits may be awarded for a closed period. *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). *See also Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638, 641 (6th Cir. 2016). A claimant who meets the 12–month durational requirement of 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A) may be entitled to benefits from the time her disability commences until such time as the disability ceases. *Id.* In a "closed period" case, the ALJ determines that a new applicant for disability benefits was disabled for a finite period of time that started and stopped prior to the date of the ALJ's decision. *Brown v. Comm'r of Soc. Sec.*, No. 1:13-cv-851, 2015 WL 502143, at *5 (S.D. Ohio Feb. 5, 2015) (Report and Recommendation), *adopted*, No. 1:13-cv-851 (S.D. Ohio Mar. 9, 2015) (unpublished) (Doc. 18) (citations omitted).

Plaintiff alleges the ALJ erred by not awarding her a closed period of disability based on her peripheral artery disease. Plaintiff contends her leg claudication and cramping lasted from the September 2012 onset date until the July 2014 stent placement in her legs, after which plaintiff reported she could walk without difficulty or cramping in her legs. (Tr. 769, 776). She

did not report further problems with peripheral artery disease until July 2015, when she first complained of left leg calf pain and claudication. (Tr. 880). If limited to sedentary work, plaintiff would be deemed disabled when she turned 50 years old in July 2013 under Grid Rule 201.14. Plaintiff alleges that she thus meets the 12-month disability requirement from July 2013 through July 2014 and is entitled to a closed period of disability.

The ALJ did not err in failing to award plaintiff a closed period of disability. Plaintiff's argument rests on the premise that her leg impairment limited her to sedentary work for a 12-month period. However, the only physicians to assess plaintiff's functional abilities determined that plaintiff was not so limited. The state agency reviewing physicians opined that plaintiff was capable of medium exertion work in August 2013 and January 2014. (Tr. 91, 104-105). These opinions took into consideration plaintiff's leg impairment. (*Id.*). As discussed above, Dr. Fritzhand, the consultative examiner, did not opine that plaintiff was limited to sedentary work. (Tr. 681). Plaintiff has failed to point to any evidence supporting her argument that she was limited to sedentary work during the relevant time period. As explained above, Dr. Fritzhand's singular finding of diminished pinprick and light touch over her legs fails to establish plaintiff was disabled from July 2013 through July 2014. Therefore, plaintiff's assignment of error should be overruled.

### 3. Migraine headaches

Plaintiff contends the ALJ erred by failing to impose any work-related limitations to account for her migraine headaches, which the ALJ found to be a severe impairment. (Doc. 8 at 11). Plaintiff is incorrect. The ALJ specifically discussed plaintiff's migraines and noted that the record indicated "they worsened with extreme temperatures." (Tr. 21, citing Tr. 851). The

ALJ imposed an RFC that prohibited plaintiff from working in an environment with "concentrated exposure to extreme temperatures." (Tr. 20). Contrary to plaintiff's contention, the ALJ reasonably imposed this restriction to accommodate plaintiff's migraine headaches. Plaintiff's assignment of error should be overruled.

### 4. The ALJ's evaluation of plaintiff's subjective complaints

Plaintiff alleges the ALJ erred in evaluating her subjective complaints under 20 C.F.R. § 404.1529, Social Security Ruling (SSR) 96-7p, 1996 WL 374186, and SSR 16-3p, 2016 WL 1119029. (Doc. 8 at 12). Defendant argues that the ALJ's evaluation of plaintiff's symptoms is supported by the objective medical and other evidence of record and therefore must be upheld under 20 C.F.R. § 404.1529(c) and SSR 96-7p.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). *See also Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

In addition, 20 C.F.R. §§ 404.1529, 416.929 and SSR 96-7p, 1996 WL 374186 (July 2, 1996)[4] describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c), SSR 96-7p.

In this case, the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference. The ALJ concluded that plaintiff's testimony was not entirely credible for several reasons. (Tr. 21). First, the ALJ determined that plaintiff's subjective complaints were not consistent with the objective evidence. Plaintiff complained of walking limitations stemming from her physical impairments, including leg claudication and degenerative disc disease. However, clinical examinations demonstrated normal gait and station, and she was

---

[4] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." *See* 2016 WL 1237954 (clarifying effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *Accord Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

able to perform heel/toe walks and tandem walks without difficulty. (Tr. 22, 681, 714, 769, 857). In addition, musculoskeletal examinations revealed normal range of motion, muscle strength, and stability. (Tr. 22, 677, 680, 685-87, 701, 714, 857).

Second, the ALJ noted that plaintiff was not always compliant with treatment recommendations, including taking medications as prescribed (Tr. 22, 782, 880) and continuing to smoke despite instructions to quit (Tr. 22, 738, 740, 853, 856, 884), which undermined her allegations of debilitating symptoms. *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 789 (6th Cir. 2017), *cert. granted sub nom. Biestek v. Berryhill*, No. 17-1184, 2018 WL 1023337 (U.S. June 25, 2018) (ALJ could consider non-compliance with prescribed treatment in assessing testimony about severity of condition). Medication compliance is a relevant factor for an ALJ to consider in assessing an individual's credibility. *See* Social Security Ruling 96-7p, 1996 WL 374186 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). Contrary to plaintiff's assertion that the ALJ erred by considering her tobacco use in assessing her credibility (Doc. 8 at 12), the Sixth Circuit has determined that an ALJ may properly consider a claimant's ongoing tobacco use in assessing credibility where it establishes noncompliance with a medical provider's directions to stop smoking. *See Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 498 (6th Cir. 2014) (affirming ALJ's decision to discount the claimant's credibility due in part to his refusal to stop smoking despite his medical providers' advice); *Hall–Thulin v. Comm'r of Soc. Sec.*, 110 F.3d 64, 1997 WL 144237, at *1 (6th Cir. Mar.

27, 1997) (quoting *Sias v. Sec'y of H.H.S.*, 861 F.2d 475, 480 (6th Cir. 1988)) (finding that the claimant's failure to stop smoking was inconsistent with his claims of intractable pain).

Third, the ALJ found that plaintiff engaged in activities that were not consistent with her allegations of debilitating impairments. (Tr. 23). Plaintiff contends the ALJ erred by finding her allegations of pain and other symptoms were inconsistent with her daily activities. (Doc. 8 at 13). Plaintiff alleges the ALJ failed to explain how her "isolated" daily activities undermined her credibility. (*Id.*). Plaintiff has not shown the ALJ committed any error in this regard. An ALJ may "consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (citing *Walters*, 127 F.3d at 532; *Blacha v. Sec. of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[A]n ALJ may consider household and social activities in evaluating complaints of disabling pain.")). The record substantially supports the ALJ's finding that plaintiff engaged in activities that were not consistent with her allegations of debilitating physical and mental impairments, including caring for her dog, driving a car, and preparing meals on a daily basis. (Tr. 23). In addition, this is only one of several factors the ALJ considered in assessing plaintiff's credibility.

Plaintiff also contends that the ALJ erred in assessing her credibility because there is objective and other evidence to support plaintiff's limitations. This includes the objective psychological testing performed by Dr. Twehues; Dr. Soria's statements that plaintiff's symptoms were reasonably consistent with the medical findings and that plaintiff is not a malingerer; her "good medications"; and her good work record. (Doc. 8 at 12, 13). However, even where substantial evidence would support a different conclusion or where a reviewing court

27

would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999). Though there is some medical evidence supporting plaintiff's testimony, the ALJ's credibility determination is substantially supported and should not be disturbed by this Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Because the ALJ's credibility determination is supported by substantial evidence, this Court must defer to it. *See Buxton*, 246 F.3d at 772. Here, plaintiff has not shown that the ALJ committed any error in connection with the assessment of her credibility. This assignment of error should be overruled.

### 5. The ALJ did not err by posing improper hypothetical questions to the VE.

Plaintiff contends the ALJ erred by posing improper hypothetical questions to the vocational expert. (Doc. 8 at 14). Plaintiff argues that the questions were improper because they did not include the limitations assessed by Dr. Twehues, including working at a slower pace and needing extra time on a job; they did not include a requirement for "superficial contact" on unskilled work as determined by the state agency psychologists; and they did not include the "mild to moderate amount" of sitting, standing, and walking found by Dr. Fritzhand. (*Id.*). Plaintiff also contends the ALJ "did not ask about the 'moderate' limitations on concentration, persistence, or pace," which were findings the ALJ made in connection with her Listings analysis. (*Id.*, citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010)).

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516. However, the ALJ's hypothetical question must include only the alleged

limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible.") (citing *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)); *Turcus v. Soc. Sec. Admin.*, 110 F. App'x 630, 633 (6th Cir. 2004) ("The ALJ is not obligated to include unsubstantiated complaints and restrictions in his hypothetical questions."). If the ALJ's hypothetical question includes the limitations the ALJ found credible, the ALJ could properly rely on the VE's testimony as substantial evidence that the plaintiff is able to perform jobs that exist in significant numbers in the national economy. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

Plaintiff's argument about the limitations assessed by Drs. Twehues and Fritzhand is essentially a reformulation of her RFC argument in her first assignment of error. Because the ALJ appropriately weighed the opinions of Drs. Twehues and Fritzhand, the ALJ's hypothetical questions to the VE, which incorporated all of the functional limitations that the ALJ found to be credible, were sufficient to convey plaintiff's limitations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (vocational expert testimony "must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects"); *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993) (in formulating a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations the ALJ accepts as credible).

Contrary to plaintiff's contention that the ALJ failed to include a limitation for "superficial contact" with co-workers, supervisors, and the public, the ALJ included such a limitation in her RFC finding as well as in her hypothetical questions to the VE. (Tr. 20, 76).

Finally, the ALJ reasonably accommodated plaintiff's moderate limitations on concentration, persistence, or pace. Concentration, persistence, or pace refers to the ability of a claimant to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00C3. By limiting plaintiff to simple, routine, repetitive, tasks performed in a work environment free of fast-paced production requirements, and involving only simple work-related decisions with few, if any, workplace changes, the ALJ reasonably accommodated plaintiff's moderate limitations in concentration, persistence or pace. *Ealy*, the case upon which plaintiff relies, is distinguishable from the instant case. In *Ealy,* the claimant's doctor limited him to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." 594 F.3d at 516. The ALJ adopted the doctor's opinion and specific limitations, but then streamlined the hypothetical question to include only a limitation to "simple repetitive tasks and instructions in nonpublic work settings" and omitted the two-hour pace-based restriction. *Id*. The Sixth Circuit determined that the ALJ's hypothetical question to the VE did not fully convey plaintiff's limitations because it omitted the speed and pace-based restrictions the ALJ found the claimant to have. *Cf. Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (limitation to simple, routine, and repetitive tasks adequately conveyed plaintiff's moderately-limited ability "to maintain attention and concentration for extended periods" where physician did not place any concrete functional limitations on

30

plaintiff's ability to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks).

Here, plaintiff does not identify evidence showing any specific, concrete restrictions relating to her ability to attend or concentrate, as found in *Ealy*. Without further explanation by plaintiff or citation to evidence to support her argument that the RFC does not accommodate her moderate limitations in concentration, persistence, or pace, the Court cannot conclude that the ALJ's hypothetical questions to the VE were erroneous.

Plaintiff's fifth assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.


Date: ___7/31/2018___                        Karen L. Litkovitz
                                             United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JUDY M. MOSLEY,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-183
Black, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).